## Bethlehem Steel Corp. v. Andco, Inc.

*Jackson M. Sigmon and Walter Monisey,* for plaintiff.

*Joseph F. Leeson,* for defendant.

GRIFO, *J.,* May 28 1986—This matter is before the court for determination of the validity and enforceability of an indemnification clause contained in a contract between plaintiff and defendant. This clause has become extremely important since, on May 7, 1986, a jury rendered a verdict against Bethlehem Steel in the amount of $375,000 in the case of John J. Krchnavy and Dianne R. Krchnavy v. Bethlehem Steel Corporation, no. 1984-C-1362. After this jury verdict, it was determined by the parties to this action that the resolution of liability for this verdict would be resolved by the court from the testimony presented at a nonjury trial immediately following the Krchnavy trial, and from the many documents introduced into evidence at both trials.

After reviewing the entire record in Krchnavy v. Bethlehem Steel, and in the present case, and after considering the briefs of the parties, we now make the following

## FINDINGS OF FACT

1. Plaintiff and defendant entered into a written contract on March 21, 1983, for work at defendant's

Bethlehem plant. The specific work which was the subject of this contract was the relining of Blast Furnace C.

2. Subsequent to the original contract for the blast furnace work, many change orders were negotiated between the parties. After a specific change was requested by Bethlehem Steel, the change order would be drafted by Andco and submitted to Bethlehem Steel for approval.

3. Change order no. 21, for additional work on the cast house floor of blast Furnace C, in the amount of $56,000, was issued on July 27, 1983.

4. The second paragraph of the cover letter for change order no. 21 specifically incorporates the terms and provisions of the original written contract.

5. While Andco was in the course of performing work specified in this change order, one of its employees, John Krchnavy, was injured when a chipping gun that he was operating exploded.

6. Evidence at the trial of Krchnavy v. Bethlehem Steel Corporation revealed that co-workers of John Krchnavy, also Andco employees, hooked up the hose connected to the chipping gun to an oxygen line rather than an air line, resulting in the explosion.

7. Plaintiff's theories of negligence against Bethlehem Steel at the trial of Krchnavy v. Bethlehem Steel Corporation were that: (1) plaintiff, as a landowner, allowed a hazardous condition to exist on its property; and (2) plaintiff violated various OSHA and other industrial standards in failing to color code and label the oxygen lines on its premises.

8. The jury found Bethlehem Steel 100 percent negligent and plaintiff not negligent, and rendered a verdict in the amount of $375,000, allocated as follows: $50,000 to the wife, Dianne Krchnavy, for loss

of consortium, and $325,000 to John Krchnavy for his injuries and lost wages.

9. Paragraph 7 in the original contract between Andco and Bethlehem Steel, identified as contract no. 100-321-61-DC, provided the following indemnification provision:

"The contractor shall indemnify and save harmless each of the Bethlehem companies from and against all loss or liability for or on account of any injury (including death) or damages received or sustained by the contractor or any of its subcontractors or any employee, agent or invitee of the contractor or any of its subcontractors by reason of any act or omission, whether negligent or otherwise, on the part of any of the Bethlehem companies or any employee, agent or invitee thereof or the condition of the site or other property of any of the Bethlehem companies or otherwise. The contractor shall further idemnify and save harmless each of the Bethlehem companies from and against all loss or liability for or on account of any injury (including death) or damages received or sustained by any person or persons by reason of any act or neglect on the part of the contractor or any of its subcontractors or any employee, agent or invitee of the contractor or any of its subcontractors, including any breach or alleged breach of any statutory duty which is to be performed by the contractor hereunder but which is or may be the duty of any Bethlehem companies under applicable provisions of law. For the purpose of this agreement, the term 'Bethlehem companies' shall include Bethlehem Steel Corporation, a Delaware corporation, its successors and assigns, and any and all companies and corporations directly or indirectly subsidiary to said Bethlehem Steel Corporation and the successors and assigns of any of them."

## DISCUSSION

Section 6 of the Workmen's Compensation Act, 77 P.S. §481(b), precluded Andco's employee, John Krchnavy, from bringing suit against Andco for his injuries. As a result, Krchnavy pursued his legal remedies against Bethlehem Steel, a third party which may be sued under §6 of the act. The instant litigation arises as a result of the idemnification provision present in the contract between Bethlehem Steel, the owner, and Andco, the contractor.

Section 6 of the Workmen's Compensation Act provides:

"(b) In the event injury or death to any employe is caused by a third party, then such employe, his legal representative, husband or wife, parents, dependents, next of kin, and anyone else otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employees, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, *unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.*" 77 P.S. §481(b). (Emphasis added.) Thus, an employer may waive immunity from claims by third-party defendants, sued by employer's employees, when the employer has expressly contracted to incur such liability, and to indemnify third-party defendants for it. These contractual waivers must be carefully scrutinized and are subject to strict construction. Girard v. Penn Valley Constructors, Inc., 343 Pa. Super. 425, 495 A.2d 210 (1985). As the in-

demnification clause quoted in finding of fact no. 8 above reveals, Andco has expressly contracted to indemnify Bethlehem Steel.

Andco, however, claims for various reasons that this indemnification clause is either unenforceable under the law, or inapplicable to John Krchnavy's accident. Andco's first argument is that the indemnification agreement is void by virtue of 68 P.S. §491, which reads as follows:

"Preparation of Plans; giving or failure to give directions; indemnification agreement:

"Every covenant, agreement or understanding in or in connection with any contract or agreement made and entered into by owners, contractors, subcontractors or suppliers, whereby an architect, engineer, surveyor or his agents, servants or employes shall be indemnified or held harmless for damages, claims, losses or expenses including attorneys' fees arising out of: (1) the preparation or approval by an architect, engineer, surveyor or his agents, servants, employes or invitees of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, or (2) the giving or the failure to give directions or instructions by the architect, engineer, surveyor or his agents, servants or employes provided such giving or failure to give is the primary cause of the damage, claim, loss or expense, shall be void as against public policy and wholly unenforceable."

As stated by defendant in its brief, no Pennsylvania court has interpreted this statutory provision. Therefore, we must examine the language of the statute itself and determine whether it is applicable to the present case. We are of the opinion that under the "plain meaning" of this statute, the disputed indemnification provision is not void.

Andco contends that since the written contract between the parties contemplated that Bethlehem Steel would perform the engineering functions necessary for the job, the above-quoted statute must apply and render the indemnification provision unenforceable. Specifically, Andco argues that the statute should be liberally construed and, thus, no distinction should be made between independent contractor engineers and owner-engineers like Bethlehem Steel. Even if we were to construe the statute in this manner, it would remain wholly inapplicable to the present facts. Concededly, Bethlehem Steel clearly performed engineering functions relating to the design and implementation of the construction work supervised by Andco. However, the accident involving John Krchnavy was in no way a result of any engineering function of Bethlehem Steel.

Plaintiff's cause of action in the case of Krchnavy v. Bethlehem Steel involved two theories: (1) that Bethlehem Steel, as an owner, allowed a hazardous condition to exist on its property; and (2) that Bethlehem Steel was negligent in violating various OSHA and industrial standards relating to the marking of oxygen lines. Based on these two theories of negligence presented in plaintiff's case, the jury found Bethlehem Steel 100 percent negligent. Both of these theories of negligence involve Bethlehem Steel's acts as an owner, not as an engineer preparing or designing plans or giving, or failing to give, directions or instructions to its agents, servants or employees as contemplated in 68 P.S. §491.

Next, Andco argues that the indemnification provision is not applicable to the verdict against Bethlehem Steel rendered by the jury for the reason that the injuries sustained by John Krchnavy occurred in the course of work specified in change order 21

for the cast house floor. Andco asserts that this change order is not part of the original contract in which the indemnification provision exists, but rather is a separate agreement between the parties. Specifically, it is asserted that the many change orders vastly increased the contractual amount, thus exposing Andco to increased liability not contemplated in the original contract. However, change order no. 21 drafted by Andco provides in the second paragraph of its cover letter to Bethlehem Steel:

"Please be advised that all terms and conditions, time and material rates, unit prices, etc., as set forth in Purchase Order no. 100-321-61-DC [original contract] will apply to the following scope of work."

Therefore, Andco, by its own actions, expressly incorporated all terms of the original contract into the change order for the cast house floor. In interpreting contracts, a court will construe a written agreement most strongly against the party drafting it. Galligan v. Arovitch, 421 Pa. 301, 219 A.2d 463 (1966); Central Transp., Inc. v. Board of Assessment Appeals of Cambria County, 490 Pa. 486, 417 A.2d 144 (1980). Accordingly, we must conclude that the indemnification provision of the original contract applies to the entire contract between the parties, including change order no. 21, work on the cast house floor.

For these reasons, we must find that Bethlehem Steel is indemnified to the full extent of its liability by operation of the indemnification provision.

## CONCLUSIONS OF LAW

1. The indemnification provision contained in the seventh paragraph of the written contract between Bethlehem Steel Corporation and Andco,

Inc., is enforceable and not void as against public policy.

2. The indemnification clause contained in the seventh paragraph of the contract between the parties applies to the work performed by John Krchnavy relating to change order no. 21, as prepared by Andco, Inc.

3. Plaintiff, Bethlehem Steel Corporation is indemnified to the full extent of its liability as determined by the jury verdict in the case of Krchnavy v. Bethlehem Steel Corporation, no. 1984-C-1352.

Wherefore, we enter the following

### VERDICT

And now, this May 28, 1986, the court enters a verdict for plaintiff Bethlehem Steel Corporation in the full amount of the verdict entered in Krchnavy v. Bethlehem Steel Corporation, no. 1984-C-1352.

If no exceptions are filed to this verdict within 10 days, the prothonotary is directed to enter final judgment upon the verdict.